IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DANIEL CHRISTOPHER BEAN, | Case No.: 2:22-cv-00892-AN |
| Plaintiff, | |
| v. | OPINION AND ORDER |
| OREGON DEPARTMENT OF CORRECTIONS, MICHAEL DWYER, CASEY CLEAVER, WARD DEAL, JEFF HALL, EZRA HAYNES, TONY HOOK, RAYMOND INGALLS, NICHOLAS KOOMEN, JONATHAN LO, GARY MORDHORST, WILLIAM ORTEGA, SAMUEL SUTTON, BRAD CAIN, KANDI ANDERSON, JOE WOODLAND, GREG JONES, NATHALINE FRENER, and JAMIE BREYMAN, | |
| Defendants. | |

   Plaintiff Daniel Christopher Bean brings two claims before this court: A claim under 42 U.S.C. § 1983 against all defendants based on violations of plaintiff's Eighth Amendment rights, and a claim under the Oregon Tort Claims Act against the Oregon Department of Corrections. Defendant Nathaline Frener brings this Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(5) and 12(6). For the reasons set forth below, defendant's motion is DENIED. Plaintiff is ordered to effectuate service on defendant Frener within 30 days of this opinion.

## LEGAL STANDARD

   Once an action is commenced, the plaintiff must serve the complaint and summons on all defendants within ninety days. Fed. R. Civ. Pro. 4(m). Rule 4(m) provides:

> "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."

## BACKGROUND

   Because this case primarily involves issues of timelines, the procedural background of this

case is as follows:

1.      The incident underlying plaintiff's complaint occurred on June 20, 2020, when plaintiff was
        assaulted by a fellow inmate at the Snake River Correctional Institution.  The assailant was arrested
        and charged with Attempted Murder and Assault in the First Degree, and that prosecution is
        presently pending.

2.      Plaintiff sent a Tort Claim Notice to the Department of Administrative Services on November 24,
        2020.  Plaintiff's counsel conferred with Department of Justice Attorney Robert Sullivan after filing
        the Tort Claim Notice regarding documentation about the event and was informed that such
        documentation was unavailable because the prosecution against the assailant was pending.

3.      After conferring with Mr. Sullivan, plaintiff filed his initial complaint on June 18, 2022.  Pursuant
        to Federal Rule of Civil Procedure 4(m), service of process was due on September 16, 2022.

4.      On August 30, 2022, plaintiff's counsel sent waivers of service for all defendants to Mr. Sullivan.

5.      On September 20, 2022, plaintiff's counsel was notified by the Court that service had not been
        effectuated on defendants.  Plaintiff's counsel promptly contacted Mr. Sullivan regarding the status
        of the waivers of service.

6.      On September 22, 2022, the Department of Justice sent a copy of the complaint and a request for
        defense form to defendant Frener, along with the sixteen other individual defendants.

7.      On September 29, 2022, Mr. Sullivan informed plaintiff's counsel that he had received completed
        Request for Defense forms from all defendants except defendant Frener.  Mr. Sullivan indicated
        that he expected to receive her form soon, but acknowledged that a special assistant attorney general
        may be assigned to represent her due to an employment conflict.

8.      On September 29, 2022, plaintiff filed his first amended complaint.  Pursuant to Rule 4(m), service
        of process was due on December 28, 2022.

9.      On October 18, 2022, plaintiff's counsel again emailed Mr. Sullivan regarding the case.  Mr.
        Sullivan responded on October 19, 2022, and indicated that he was composing an answer to the

complaint for the defendants who had waived service, but that he was still missing defendant Frener.

10.    On November 18, 2022, the Court emailed plaintiff regarding the lack of appearances or waivers of service for defendants Casey Cleaver, Nathaline Frener, Kandi Anderson, and Tony Hook.

11.    On December 22, 2022, plaintiff's counsel emailed Mr. Sullivan regarding service for defendant Frener. Plaintiff did not receive a response.

12.    On January 4, 2023, Mr. Sullivan emailed plaintiff's counsel to notify him that they were still obtaining conflict counsel for defendant Frener.

13.    On January 6, 2023, the Court emailed plaintiff regarding the lack of appearances or waivers of service for defendants Casey Cleaver, Nathaline Frener, Kandi Anderson, and Tony Hook.

14.    On January 12, 2023, the State filed its answer to the complaint and did not raise an untimely service defense.

15.    On January 23, 2023, plaintiff's counsel received a letter of representation sent by defendant Frener's counsel that requested a waiver of service. Plaintiff's counsel mailed a waiver of service that same day.

16.    At no point has plaintiff provided proof of service upon defendant Frener, nor has defendant Frener submitted a waiver of service.

## DISCUSSION

It is undisputed that defendant Frener has never been served in connection with this case. When a plaintiff does not comply with the service deadline, Federal Rule of Civil Procedure 4(m) provides two methods of avoiding dismissal. First, the court must extend time for service upon a showing of good cause. *Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir. 2009). Second, the court has discretion to extend the time for service, even absent good cause, if the delay was due to excusable neglect. *Id.* The plaintiff bears the burden of proving the existence of either good cause or excusable neglect. *Id.*

A.    **Plaintiff's Federal Claims**

If a plaintiff shows good cause for the failure to complete service, then the court must

extend the time for service for an appropriate period. *Id.* Good cause may be established, at a minimum, through excusable neglect. *Boudette vv. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991). However, to establish good cause, a plaintiff may be required to show three additional factors: (1) The party to be served personally received actual notice of the lawsuit; (2) the defendant would suffer no prejudice; and (3) the plaintiff would be severely prejudiced if the complaint were dismissed. *Lemoge*, 587 F.3d at 1198 n.3.

     *1.*    *Excusable Neglect*

     Excusable neglect is analyzed based on four factors: (1) The danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the plaintiff acted in good faith. *Id.* at 1192. Although all four criteria need not be met or even weigh in plaintiff's favor, each criterion must be individually assessed. *Id.* at 1192-93.

     a. Prejudice to the Opposing Party

     Plaintiff argues that defendant Frener would suffer no prejudice by this suit, other than having to defend it. Defendant concedes that she would suffer no prejudice by having to defend the case on its merits. Def. Motion 5 n.2; *see Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1225 (9th Cir. 2000) (finding that having to defend action on its merits caused defendant minimal prejudice). Thus, the first prong weighs in favor of extension.

     b. Length of Delay

     Although defendant notes that 243 days have passed since the commencement of this lawsuit and defendant's motion to dismiss, there is evidence that defendant received actual notice of the lawsuit as early as September 2022 when she was sent a copy of the complaint and a request for defense form from the Department of Justice. Defendant is correct that, in other cases, shorter delays in service have still warranted dismissal of a party. *See Fimbres v. United States*, 833 F.2d 138, 139 (9th Cir. 1987) (finding 157 and 160 day delay weighed in favor of dismissal); *Sohal v. Mondelez Global LLC*, No. 3:22-cv-00998-MO, 2023 WL 172203, at *2 (D. Or. Jan. 11, 2023) (109 day delay weighed in favor of dismissal). However, the defendants in those cases did not receive notice of the lawsuit through some other means.

     Further, the delay in service is unlikely to impact the proceedings. At this point, only the

first amended complaint and the State's answer have been filed. Because this case is pending the conclusion of an underlying criminal prosecution, this case has had minimal movement. Permitting an extension of service would not subject defendant Frener to an unfair position or drop defendant Frener into the middle of complex litigation.

On balance, the length of delay between the commencement of the action and defendant's motion may weigh in favor of dismissal; however, the length of delay between the commencement of this action and defendant's actual notice of the action, and the potential impact to the proceedings, weigh in favor of extension.

c. Reason for the Delay

The delay in service appears to have occurred because it was unclear for some time who would represent defendant Frener. Plaintiff maintained consistent contact with Mr. Sullivan, the attorney who was representing the majority of the other defendants, while defendant Frener's representation issue was resolved. Plaintiff's actions do not indicate that he was attempting to intentionally avoid his Rule 4(m) obligations. On the contrary, once plaintiff was made aware of who was representing defendant Frener, he promptly sent a waiver of service. Defendant makes no allegations as to whether that waiver was received.

However, regardless of the representation issue, plaintiff had an ongoing obligation to serve defendant Frener. Plaintiff could have personally served defendant despite her lack of counsel, or plaintiff could have filed a motion for extension of time to effectuate service.[1] Because plaintiff was aware that a delay in service was likely but declined to take mitigating steps, this factor weighs in favor of dismissal.

d. Good Faith

The evidence indicates that plaintiff acted in good faith throughout these proceedings. Plaintiff communicated with Mr. Sullivan, plaintiff's only contact regarding defendant Frener, until defendant received outside counsel, and plaintiff routinely asked about the status of defendant's

---

[1] This is especially noteworthy given that plaintiff filed two motions for extension of time of discovery and PTO deadlines on October 19, 2022, and February 16, 2023.

representation.  Plaintiff did not continue to file motions against defendant Frener when he knew that she had not been served, nor does the record indicate that he strategically delayed service in an attempt to circumvent his Rule 4(m) obligations.  In sum, plaintiff was aware that there was an issue of service with defendant Frener, and he made ongoing good faith attempts to resolve that issue by maintaining contact with the only defense counsel participating in the litigation at the time, and by promptly sending a waiver of service when defendant Frener's counsel requested one.  Plaintiff's good faith efforts weigh in favor of extension.

On balance, the court finds that plaintiff's actions rise to the level of excusable neglect. Defendant would not suffer prejudice from dismissal, defendant was aware of the nature of the lawsuit against her as early as September 2022, and extending the time for service would not impact the proceedings at this stage of litigation.  Plaintiff did not delay service to elude the requirements of Rule 4(m), but rather made continual good faith efforts to comply with that rule by continuing to inquire about the status of defendant Frener's representation and by sending a waiver of service the same day that he was notified of her representation.  Thus, the Court has discretion to extend the time for service.

2.    *Good Cause*

However, the Court does not find that plaintiff's delay in service rises to the level of good cause.  As noted above, to raise excusable neglect to the level of good cause, a plaintiff may need to demonstrate three additional factors: (1) The party to be served personally received actual notice of the lawsuit; (2) the defendant would suffer no prejudice; and (3) the plaintiff would be severely prejudiced if the complaint were dismissed.  *Lemoge*, 587 F.3d at 1198 n.3.

Plaintiff has sufficiently proven the first two factors. Defendant does not dispute that she received actual notice of the lawsuit in September 2022 when the Department of Justice sent her a copy of the complaint and a request for defense form.   Defendant has conceded that she would suffer no prejudice by defending this action on the merits. Def. Mot. at 5 n.2; *see Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1225 (9th Cir. 2000) (finding that having to defend action on its merits caused defendant minimal prejudice).

However, plaintiff has not established sufficient proof that he would be severely prejudiced if defendant Frener were dismissed.  It is true that, if defendant Frener were dismissed from this case, plaintiff would be barred by the statute of limitations from refiling his claims against defendant Frener. However, such a scenario would not bar plaintiff from litigating *this action* because seventeen defendants would still remain in this case.  That is, plaintiff would not barred from litigating this action in its entirety, but rather would be barred only from litigating this action against defendant Frener.  Thus, dismissing defendant Frener from this case would not cause severe prejudice to plaintiff.

Because plaintiff has not provided sufficient proof of all three required factors, plaintiff's actions do not rise to the level of good cause and constitute only excusable neglect.  Therefore, this court may extend the time for service, but it is not required to do so.  Such an extension is warranted.  Plaintiff's counsel made good faith efforts to comply with Rule 4(m) by maintaining communication with the only defense counsel available at the time.  Though it would have been advisable for plaintiff to submit a motion to extend the service deadline, the delay in service was not due to any strategic choices, but rather ongoing issues regarding who would represent defendant Frener. Once he was aware of defendant's representation, plaintiff's counsel promptly provided a waiver of service.  Defendant had actual notice of the lawsuit as early as September 2022 and would suffer minimal, if any, prejudice from an extension.

In sum, the equities in consideration weigh in favor of granting an extension.  As for the federal claims, defendant's Motion to Dismiss is DENIED and plaintiff is ordered to effectuate service on defendant Frener within 30 days of this opinion.

**B.    State Law Claims**

Defendant also moves to dismiss with prejudice plaintiff's Oregon Tort Claims Act ("OTCA") negligence claim, arguing that the action was not commenced within the statute of limitations. "[S]tate law determines when an action is commenced for statute of limitations purposes." *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751 (1980).  Under the OTCA, a claim against a government official "shall be commenced within two years after the alleged loss or injury."  ORS 30.275(9).  If service of summons is completed within 60 days of filing the complaint, the action is considered "commenced" on the date that

7

the complaint was filed.  ORS 12.020(2); *see Baker v. City of Lakeside*, 343 Or. 70, 83, 164 P.3d 259 (2007) (holding that ORS 12.020(2) applies to OTCA claims).

Defendant notes that plaintiff filed his complaint on June 18, 2022, two days shy of the two-year statute of limitations.  However, because plaintiff did not serve defendant Frener within sixty days of filing his complaint, defendant argues that the state law claims did not commence on June 18, 2022.  Thus, in defendant's view, the state law claims against defendant are barred by the statute of limitations and must be dismissed.  Plaintiff argues that notice was properly served because the Oregon Department of Corrections is the proper party to receive service under the OTCA, and that department both submitted a waiver of service and filed an answer in which it did not raise untimely service as a defense.

The relevant question is who the proper defendant is for plaintiff's OTCA claim.  When an OTCA claim alleges damages "in an amount equal to or less than" those allowed under ORS 30.271, 30.272, or 30.273, "the sole cause of action for a tort committed by officers, employees or agents of a public body acting within the scope of their employment or duties . . . is an action against the public body."  ORS 30.265(3).  If the damages alleged are greater than the damages allowed under those statutes, an action may be maintained against the officers, employees, or agents of the public body.  ORS 30.265(4). Plaintiff's complaint does not allege a sum certain for damages.  Amend. Compl. at 14.  However, plaintiff stated that the Oregon Department of Corrections "is the proper party to an Oregon Tort Claim and not its agents or employees."  Pl. Resp. at 10.  Further, the Oregon Supreme Court has noted that "under the OTCA, public officers, employees, and agents are not subject to actions for torts committed while acting within the scope of their employment or duties, and *the injured person must bring any claim based on their actions against the public body only*."  *Vaughn v. First Transit, Inc.*, 346 Or. 128, 133-34, 206 P.3d 181 (2009) (emphasis added).  Thus, the Oregon Department of Corrections is the only defendant to plaintiff's state law claims.

Because defendant Frener is not a party to plaintiff's state law claims, she lacks standing to dismiss those claims.  Thus, as for the state law claim, defendant's Motion to Dismiss is DENIED.

## CONCLUSION

Accordingly, Defendant Nathaline Frener's Motion to Dismiss is DENIED.  Plaintiff is

ordered to effectuate service on defendant Frener within 30 days of this opinion.


IT IS SO ORDERED.

DATED this 21 day of April, 2023.

Adrienne Nelson
United States District Judge